15-3117-cv
Travelers Indem. Co. v. Northrop Grumman Corp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of January, two thousand seventeen.

PRESENT:  REENA RAGGI,
          DENNY CHIN,
          RAYMOND J. LOHIER, JR.,
                              *Circuit Judges*.

---------------------------------------------------------------------------
TRAVELERS INDEMNITY COMPANY, TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, f/k/a TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND,

        *Plaintiffs-Counter-Defendants-Appellees*,

TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a THE AETNA CASUALTY AND SURETY COMPANY,

        *Plaintiff-Counter-Defendant*,

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, f/k/a TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

        *Plaintiff*,

        v.               No. 15-3117-cv

NORTHROP GRUMMAN CORPORATION, NORTHROP GRUMMAN SYSTEMS CORPORATION,

 *Defendants-Cross-Claimants-Counter-Claimants-Appellants*,

CENTURY INDEMNITY COMPANY, eventual successor in interest to INSURANCE COMPANY OF NORTH AMERICA,

*Defendant-Cross-Defendant-Appellee*.

--------------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANTS: | MARK W. MOSIER (Georgia Kazakis, Elliott Schulder, Amit R. Vora, *on the brief*), Covington & Burling LLP, Washington, D.C. |
| APPEARING FOR APPELLEES: | LYNN K. NEUNER (Mary Beth Forshaw, *on the brief*), Simpson Thacher & Bartlett LLP, New York, New York, *for* Travelers Appellees. |
| | JONATHAN D. HACKER (Bradley N. Garcia, *on the brief*), O'Melveny & Myers LLP, Washington, D.C.; (Shane R. Heskin and Robert F. Walsch, *on the brief*), White and Williams LLP, Philadelphia, Pennsylvania, *for* Century Indemnity Company. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Katherine B. Forrest, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 2, 2015, is AFFIRMED.

Defendants Northrup Grumman and related entities ("Grumman"), defense contractors, here appeal from a grant of summary judgment in favor of Travelers Indemnity Company and related entities ("Travelers") and Century Indemnity Company ("Century") (collectively, "the insurers") on declaratory judgment claims regarding the insurers' defense or indemnity obligations for certain Long Island sites where Grumman faced environmental claims. We review an award of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences and resolving all ambiguities in that party's favor. *See*

2

*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 47 (2d Cir. 2012). In conducting our review, we assume the parties' familiarity with the facts and record of prior proceedings. Nevertheless, some background is necessary to explain our decision to affirm for the reasons stated below. The district court set forth its reasons for granting summary judgment and summarized the facts in detail in its March 7, 2014 and March 13, 2014 opinions and orders. *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 4 F. Supp. 3d 599 (S.D.N.Y. 2014); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 117 (S.D.N.Y. 2014); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 3 F. Supp. 3d 79 (S.D.N.Y. 2014); *Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12 CIV. 3040 KBF, 2014 WL 923211 (S.D.N.Y. Mar. 7, 2014).

Grumman operated a 600-acre naval aircraft manufacturing and testing facility (the "Facility") in Bethpage, New York, starting in the 1930s. Within the original boundaries of the Facility is an 18-acre parcel now constituting the Bethpage Community Park (the "Park"), which Grumman donated to the Town of Oyster Bay in October 1962. The Park sits on what used to be "sludge drying beds," where Grumman placed wastewater treatment sludge generated from its plants. SPA-12.

From 1968 to 1985, Grumman purchased primary and excess liability insurance policies from Travelers, which included two claims-made Environmental Hazard policies for 1983 and 1984. For many years, Travelers' policies provided Grumman over $100 million in coverage per occurrence, per year. From 1951 to 1968, Grumman purchased primary and excess liability policies from Century, including Comprehensive General Liability policies from 1951 to 1962 and umbrella policies from 1951 to 1968. These

3

Century policies provided Grumman at least $2 million and up to $4.5 million in coverage per occurrence, per year.

In connection with its operations at the Facility, Grumman used and stored contaminants such as trichloroethylene ("TCE"), a liquid used as a degreaser for metal parts, which is "toxic by inhalation, by prolonged or repeated contact with the skin or mucous membrane, or when taken by mouth." SPA-210. Grumman began using TCE in the 1940s, primarily as a cleaning solvent for airplane parts and paint guns. Grumman disposed of, stored, and "recycled" the TCE in various ways extensively detailed by the district court. Ultimately, a large plume of groundwater contamination developed below the Facility and now extends across more than 2,000 acres in Long Island. In addition, in the early 2000s, the soil at the Park was found to contain high levels of TCE. As a result, Grumman has been, and remains, subject to a number of claims and clean-up costs relating to the Facility and the Park for environmental pollution that may have occurred during the years covered by the insurance policies that are the subject of this case.

1.    Waiver

We conclude that neither Century nor Travelers waived their late notice defenses. As an initial matter, although the argument was not addressed by the district court, we conclude that Travelers' written waiver in the record 2002 and 2003 letters did not pertain to the Park, the Facility, or the Water District claims here at issue. The 2002 letter explicitly discusses claims pertaining only to the Bethpage Water District, and the 2003 letter was merely a follow-up to the 2002 letter. Accordingly, although the letter was captioned "Grumman Facility, Bethpage, NY" it cannot reasonably be construed to

4

waive a late notice defense as to all claims falling within that description. *See General Motors Acceptance Corp. v. Clifton-Fine Cent. Sch. Dist.*, 85 N.Y.2d 232, 236, 623 N.Y.S.2d 821, 823 (1995) (explaining that, in New York, "[w]aiver requires the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable"). The other grounds raised for waiver as to Travelers fail for the reasons articulated by the district court.

As for Century, we conclude that it could not be expected to assert its late notice defense in the absence of effective notice as to the Facility claim, as discussed in the next portion of this order. *See Luria Bros. & Co. v. All. Assur. Co.*, 780 F.2d 1082, 1090 (2d Cir. 1986) (observing "that an insurer cannot waive a defense by asserting another defense as grounds for declination if it had no knowledge of the facts giving rise to the unasserted defense"). Moreover, there was no waiver through selective disclaimer because the only disclaimer Century asserted pertained to the Old Bethpage Landfill claims and not to the Facility claim. Grumman cites no authority to support the implausible conclusion that an insurer could waive a defense to one claim by asserting a different defense to a different claim. Finally, without a showing of Century's intent to abandon the defense or prejudice to Grumman, *see Fairmont Funding, Ltd. v. Utica Mut. Ins. Co.*, 264 A.D.2d 581, 581–82, 694 N.Y.S.2d 389, 391 (1st Dep't 1999) ("Under the common-law rule, delay in giving notice of disclaimer of coverage, even if unreasonable, will not estop the insurer to disclaim unless the insured has suffered prejudice from the delay."), the argument that Century waived its late notice defense through the mere passage of time fails on the merits, *see KeySpan Gas E. Corp. v. Munich Reinsurance*

5

*Am., Inc.*, 23 N.Y.3d 583, 590–91, 992 N.Y.S.2d 185, 189 (2014) (explaining that "insurer will not be barred from disclaiming coverage simply as a result of the passage of time, . . . [rather,] its delay in giving notice of disclaimer should be considered under common-law waiver and/or estoppel principles" (internal quotation marks omitted)).

Because there is no basis for concluding that Century or Travelers waived their late notice defenses, we affirm the district court's holdings to that effect.

2.      Notice

Under New York law, "an insurer has the right to demand that it be notified of any loss or accident that is covered under the terms of the insurance policy." *American Transit Ins. Co. v. Sartor*, 3 N.Y.3d 71, 75, 781 N.Y.S.2d 630, 632 (2004). Such a notice requirement affords an insurer the opportunity to protect itself by investigating claims shortly after the occurrences that caused them, *see id.*, as well as enabling it "to set proper reserves covering anticipated losses, to decide whether it wishes to exercise its right to associate in the defense of a particular claim, and to establish premiums that accurately reflect past loss experience," *Christiania Gen. Ins. Corp. of N.Y. v. Great Am. Ins. Co.*, 979 F.2d 268, 274 (2d Cir. 1992). Accordingly, "where a contract of primary insurance requires notice 'as soon as practicable' after an occurrence, the absence of timely notice of an occurrence is a failure to comply with a condition precedent which, as a matter of law, vitiates the contract." *Argo Corp. v. Greater N.Y. Mut. Ins. Co.*, 4 N.Y.3d 332, 339, 794 N.Y.S.2d 704, 706 (2005). "Each policy imposes upon the insured a separate, contractual duty to provide notice." *Sorbara Constr. Corp. v. AIU Ins. Co.*, 11 N.Y.3d 805, 806, 868 N.Y.S.2d 573, 574 (2008) (holding that notice provided under workers'

6

compensation policy at time of occurrence insufficient to satisfy notice under liability policies even though policies written by same carrier).

The insurance policies here at issue impose notice obligations for both occurrences and claims. This court has explained that, under New York law,

> a claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy. It "must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." *Evanston Ins. Co. v. GAB Business Servs., Inc.*, 132 A.D.2d 180, 185, 521 N.Y.S.2d 692, 695 (1st Dep't 1987) (interpreting a standard "claim" provision). A claim may be made without the institution of a formal proceeding.

*American Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 439 (2d Cir. 1995). Although "as soon as practicable" means notice must be "given within a reasonable time in view of all of the circumstances," *Bigman Bros., Inc. v. QBE Ins. Corp.*, 73 A.D.3d 1110, 1111, 904 N.Y.S.2d 439, 440–41 (2d Dep't 2010), "[e]ven relatively short periods of unexcused delay are unreasonable as a matter of law," *2130 Williamsbridge Corp. v. Interstate Indem. Co.*, 55 A.D.3d 371, 372, 866 N.Y.S.2d 105, 107 (1st Dep't 2008). *See, e.g.*, *Steinberg v. Hermitage Ins. Co.*, 26 A.D.3d 426, 427, 809 N.Y.S.2d 569, 571 (2d Dep't 2006) (concluding that notice of occurrence 57 days after was untimely); *see also American Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d 76, 78 (2d Cir. 1993) (collecting cases in which delays of fewer than 54 days held untimely as matter of New York law).

Nevertheless, New York law clearly requires that "[n]otice requirements . . . be liberally construed in favor of the insured, with substantial, rather than strict, compliance

7

being adequate." *Greenburgh Eleven Union Free Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 304 A.D.2d 334, 335–36, 758 N.Y.S.2d 291, 293 (1st Dep't 2003).

a.    Travelers: Notice as to the NYSDEC Facility Claim

Without reaching the question of whether notice of occurrence was required prior to 1984, we conclude that Grumman failed to provide effective notice of the New York State Department of Environmental Conservation ("NYSDEC") Facility claim.  A predicate to effective notice in these circumstances was Travelers' receipt of the 1984 package including the 1983 Potentially Responsible Person ("PRP") letter, or at least a presumption in favor of such receipt.  No such presumption can be drawn from Grumman's transmittal of the 1984 package to an insurance broker.  In *Gershow Recycling Corp. v. Transcontinental Insurance Co.*, 22 A.D.3d 460, 801 N.Y.S.2d 832 (2d Dep't 2005), the court upheld a late notice defense where the insured sent notice of a lawsuit to its broker, and the broker forwarded the lawsuit to the wrong insurer, because "insureds [notify their brokers, rather than their carriers,] at their peril since the law is clear: the policy requirement that the notice must be provided to the carrier trumps any informal arrangement or practice engaged in between insureds and their brokers." *Id.* at 462, 801 N.Y.S.2d at 834.  Accordingly, in New York, the duty to provide notice is not satisfied merely by placing the notice in the mail; rather, the specific insurer to whom notice is due must actually or presumptively have received such notice.

Further, Grumman's argument that the evidence is sufficient for a jury to draw a reasonable inference that Travelers received the 1984 package is unconvincing.  In making this argument, Grumman relies on *Geisco, LLC v. Greater New York Mutual*

8

*Insurance Co.*, 44 A.D.3d 616, 844 N.Y.S.2d 44 (2d Dep't 2007), contending that the evidence of receipt is stronger here than it was in that case, which held that there was a question of fact as to whether the sub-broker received notice where the broker mailed it to an address containing the wrong street and town name, and there was no evidence that it was returned to the sender. *See id.* at 617, 844 N.Y.S.2d at 45. Grumman's reliance is misplaced because in *Geisco*, the sub-broker from whom notice was supposed to be sent to the insurer merely summarily denied receipt of the notice from the broker. By contrast, here, there is some affirmative, albeit circumstantial, evidence that Travelers never received the letter. *See id.* Further, as in *Geisco*, the rebuttable presumption that an item was received does not here apply because the package was not properly mailed to the correct address. *See id.* (stating that presumption of receipt inapplicable because notice was misaddressed); *see also New York & Presbyterian Hosp. v. Allstate Ins. Co.*, 29 A.D.3d 547, 547–48, 814 N.Y.S.2d 687, 688 (2d Dep't 2016) (discussing circumstances in which rebuttable presumption of receipt applies).

Grumman argues that Travelers should bear the consequences of providing the wrong address regardless, citing *A.H.A. General Construction, Inc. v. New York City Housing Authority*, 92 N.Y.2d 20, 31, 677 N.Y.S.2d 9, 15 (1998) (holding that "party cannot insist upon a condition precedent, when its non-performance has been caused by [it]self"). That case, however, requires "bad faith or negligence in the performance of the contract" that "prevent[s] or hinder[s] [the other party's] compliance with the notice and reporting requirements." *Id.* Even if providing an incorrect address could constitute negligence, that is not the case here, because Travelers provided the slightly erroneous

9

Garden City address at issue in a January 1984 letter to Grumman's broker, which requested that all correspondence regarding the defense of the *Old Bethpage Landfill* lawsuit be so directed. Accordingly, when Grumman sent the 1984 package that purportedly gave notice of an *unrelated* claim to this address,[1] regardless of its accuracy, Grumman, not Travelers, must bear the consequences of non-receipt.

In the absence of a presumption in favor of, or any evidence supporting, Travelers' receipt of the 1984 package, we conclude that notice was not adequately provided to Travelers as to the Facility claim, and coverage is barred on that basis.

b. Century: Notice as to the NYSDEC Facility Claim

Century argues that the 1984 package was substantively inadequate to afford it notice because the package did not identify any Century policies under which coverage was sought, addressed a different suit at a different site, and was directed to a different insurer with different types of policies. We agree with the district court that Grumman's "obligation to provide separate notice as to each policy under which it seeks coverage" was not fulfilled by copying Century in this manner. SPA-312; *see Sorbara Constr. Corp. v. AIU Ins. Co.*, 11 N.Y.3d at 806, 868 N.Y.S.2d at 574 (holding that "[e]ach policy imposes upon the insured a separate, contractual duty to provide notice"). Despite Grumman's contentions to the contrary, this conclusion is unaffected by the substantial

---

[1] Travelers contends that the 1984 package did not constitute notice in any event because the mailing purported to transmit only "additional information" on the Old Bethpage Landfill lawsuit, rather than additional claims relating to the entire Facility. We need not decide the issue in light of our disposition.

10

compliance standard. Because Grumman's notice to Century as to the Facility claim was inadequate, coverage is barred on that basis.

        c.      <u>Travelers and Century: Notice as to the NYSDEC and Town of Oyster Bay Park Claims</u>

We need not decide whether the Facility and the Park NYSDEC claims required separate notice because notice to both insurers as to the Park claim was insufficient in any event. Even assuming *arguendo* that the NYSDEC Park claim was separate from the NYSDEC Facility claim, the notice Grumman provided to Travelers on October 10, 2002—77 days after the July 26, 2002 NYSDEC letter asserting Grumman's responsibility for remediation of "this newly identified area," App'x 1451—was untimely as a matter of law. *See American Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d at 78 (explaining that delays of fewer than 54 days held untimely as matter of New York law). Moreover, Grumman never even attempted to notify Century of the NYSDEC Park claim. Therefore, coverage is barred for the NYSDEC Park claim as to both insurers as a result of inadequate notice.

As for the Town of Oyster Bay ("TOB") Park claim, Grumman argues that because the December 2002 letter relating to pollution at the Park professed an intent to sue under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 *et seq.* (a different legal theory than that eventually pursued by the TOB), the June 2005 notice pertained to a different claim.

We are not persuaded. Even though the TOB eventually brought suit in 2005 under the Comprehensive Environmental Response, Compensation, and Liability Act

11

("CERCLA"), 42 U.S.C. § 1906 *et seq.*, rather than the RCRA, the 2002 TOB letter raised a claim triggering Grumman's duty to provide notice to both insurers. None of the parties cite any legal authority supporting the proposition that a third party's original claim becomes a new claim if based on a revised legal theory, particularly when, as here, that theory was available at the time of the original claim. As such, the notice of claim Grumman provided three years after receipt of the TOB's 2002 intent-to-sue letter failed to satisfy its obligations under either insurer's policies as to the TOB Park claim.

Further, even if notice was not due upon receipt of the TOB's 2002 intent-to-sue letter, Grumman waited 47 days after the TOB filed its April 29, 2005 complaint before sending notice of the claim to both insurers on June 14, 2005. Based on delays previously deemed untimely as a matter of law in New York, *see American Home Assur. Co. v. Republic Ins. Co.*, 984 F.2d at 78, Grumman's June 2005 notice was insufficient in any event. As such, coverage for the TOB's Park claim is barred due to Grumman's failure to satisfy the insurers' policies' notice requirements.

###### d.     Travelers and Century: Notice as to the Water District Claims

Finally, we identify no error in the district court's ruling that Grumman failed to satisfy its notice obligations with regard to the Water District claims.[2] Like the district court, we conclude that Grumman owed notice to the insurers with respect to the Aqua New York ("AWD") and South Farmingdale ("SFWD") Water Districts as early as November 2000, when Grumman met with those water districts. At that time, the SFWD

---

[2] We need not reach the question of whether the Water District claims were separate from the NYSDEC claims because notice was inadequate regardless.

"expressed a belief that Grumman should be required to pay for wellhead treatment and would pay the cost of treatment and subsequent operating and maintenance costs," and Grumman expected that the contamination from Bethpage would pollute the drinking water of both the AWD and the SFWD. SPA-335–36; *see American Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d at 439 (noting that "claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy. . . . [and] may be made without the institution of a formal proceeding"). For the same reasons, we agree with the district court that Grumman owed notice to the insurers regarding the Massapequa Water District ("MWD") claim as early as January 2001, when—during a meeting with the AWD, the MWD, and the SFWD—the Water Districts expressed concern about contamination of their groundwater, and Grumman understood that it might be responsible for costs associated with ensuring a clean water supply.

Accordingly, because Grumman provided notice to the insurers only in 2009 about the AWD claim, in 2010 about the MWD claim, and in 2012 about the SFWD claim, notice was untimely as a matter of law, and coverage as to those claims is barred on that basis. *See, e.g.*, *Steinberg v. Hermitage Ins. Co.*, 26 A.D.3d at 427, 809 N.Y.S.2d at 571 (holding untimely notice of occurrence provided 57 days after triggering event).

13

3.     Conclusion

We have considered Grumman's remaining arguments and conclude that they are

without merit.    Accordingly, the district court's September 2, 2015 judgment is

AFFIRMED.

> FOR THE COURT:
> CATHERINE O'HAGAN WOLFE, Clerk of Court

14